UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RABAH ARABO,

        Plaintiff,               Case No. 2:21-cv-12471
                                District Judge George Caram Steeh
v.                            Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 10), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), and REMAND THIS MATTER TO THE COMMISSIONER

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment or remand (ECF No. 10), **DENY** Defendant's motion for summary

judgment (ECF No. 12), and **REMAND** this matter to the Commissioner for action

consistent with this report.

**II.     REPORT**

    Plaintiff, Rabah Arabo, brings this action under 42 U.S.C. §§ 405(g) and/or

1383(c)(3) for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and
Recommendation on Plaintiff's motion for summary judgment or remand (ECF
No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 12),
Plaintiff's reply (ECF No. 13), and the administrative record (ECF No. 8).

### A.    Background and Administrative History

Plaintiff alleges his disability began on January 1, 2018, at the age of 55.
(ECF No. 8, PageID.191.)  In his disability report, he lists several conditions −
degenerative disc disease (DDD), spondylosis at L3-L4, gastroesophageal reflux
disease (GERD), muscle spasms, residual effects from a stroke in October 2015,
and vision problems − as limiting his ability to work.  (*Id*., PageID.210.)  His
application was denied initially on February 27, 2020 (*id*., PageID.89-101, 119-
135) and upon reconsideration on April 27, 2020 (*id*., PageID.102-114, 136-151).

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id*.,
PageID.152-153.)  On August 18, 2020, ALJ Anthony Smereka held a hearing, at
which Plaintiff and a vocational expert (VE), Annette Holder, testified.  (*Id*.,
PageID.52-88.)  On September 1, 2020, ALJ Smereka issued an opinion, which
determined that Plaintiff was not disabled within the meaning of the Social
Security Act.  (*Id*., PageID.36-51.)

Plaintiff submitted a request for review of the hearing decision/order.  (*Id*.,
PageID.189-190.)  However, on August 20, 2021, the Appeals Council denied

Plaintiff's request for review.  (*Id.*, PageID.25-30.)  Thus, ALJ Smereka's decision

became the Commissioner's final decision.  Plaintiff timely commenced the instant

action on October 20, 2021.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 178 pages of medical

records.  (ECF No. 8, PageID.284-461 [Exhibits 1F-9F].)  These materials were

available to the ALJ at the time of his September 1, 2020 decision (*id.*, PageID.36,

50-51), and will be discussed in detail, as necessary, below.

### C.    The September 1, 2020 Administrative Decision

Pursuant to 20 C.F.R. § 404.920(a)(4), at **Step 1** of the sequential evaluation

process, the ALJ found that Plaintiff had not engaged in substantial gainful activity

during the period from his alleged onset date (AOD) of January 1, 2018 through

his date last insured (DLI) of September 30, 2018.  (ECF No. 8, PageID.41.)  At

**Step 2**, the ALJ found that Plaintiff had one severe impairment, namely,

spondylosis of the lumbar spine.  (*Id.*, PageID.41-42.)  At **Step 3**, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments.  (*Id.*,

PageID.42.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the

RFC:

> . . . to perform light work [*i.e., exertional limitations*] . . . with the following exceptions:  he needed to avoid work at unprotected heights or around dangerous moving machinery [*i.e., environmental limitations*]; he could occasionally climb ladders; he could not climb ropes or scaffolds; he had the ability to occasionally climb ramps or stairs; he could frequently balance; he could occasionally stoop, kneel, crouch, and crawl [*i.e., postural limitations*]; and he needed to avoid concentrated exposure to cold [*i.e., environmental limitations*].

(*Id.*, PageID.43-46.)  At **Step 4**, the ALJ determined that Plaintiff was capable of

performing past relevant work as an "owner/manager" and the job is "generally

performed in the national economy."  (*Id.*, PageID.46-47.)[2]  The ALJ therefore

concluded that Plaintiff had not been under a disability, as defined in the Social

Security Act, at any time from January 1, 2018 the AOD, through September 30,

2018, the DLI.  (*Id.*, PageID.47.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[2] The ALJ also acknowledged Plaintiff's representative's argument that Plaintiff's past relevant work as an owner/manager "should not be considered because the work no longer exists in significant numbers in the national economy."  (*Id.*, PageID.47; *see also id.*, PageID.84-85.)  However, the ALJ noted this was "not a relevant consideration."  (ECF No. 8, PageID.47.)  *See Barnhart v. Thomas*, 540 U.S. 20, 22 (2003) ("the SSA may determine that a claimant is not disabled because she remains physically and mentally able to do her previous work, without investigating whether that previous work exists in significant numbers in the national economy.").

**D.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

5

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that the ALJ "failed to create an accurate [RFC] assessment" and "improperly evaluated the medical opinions."  (ECF No. 10, PageID.474-484; *see also* ECF No. 13.)  The Commissioner counters that substantial evidence supports the ALJ's RFC assessment and consideration of the opinion evidence. (ECF No. 12, PageID.495-514.)

### 1.    RFC

Plaintiff argues that the ALJ's "light work" RFC determination is inaccurate, because "the evidence indicates that Plaintiff should be limited to at most a sedentary exertion level," and such an exertional limitation would render her "disabled" under Medical-Vocational Rule 201.02, which provides that a person who is limited to sedentary work and of "advanced age," with an education of "limited or less" and with previous work experience of "skilled or semiskilled-skills not transferable" is disabled.  (*See* ECF No. 8, Page ID. 46-47, 55, 89, 102, 211; ECF No. 10, PageID.475, 482.)  *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

However, notwithstanding the Commissioner's argument that "[s]ubstantial evidence supports the ALJ's RFC assessment[,]" (ECF No. 12, PageID.495-508), or the Plaintiff's related reply (ECF No. 13, PageID.516-521), the Court need not resolve this issue.  This is so, because Plaintiff is entitled to relief on his second statement of error, although on a different basis than briefed by the parties.

### 2.    Opinion evidence

Plaintiff argues that the ALJ "improperly weighted [the] medical opinions[.]"  (ECF No. 10, PageID.483.)  With respect to claims filed on or after March 27, 2017, the opinion evidence regulation provides:  "We will articulate in our determination or decision how persuasive we find all of the medical opinions

7

and all of the prior administrative medical findings in your case record."  20 C.F.R.

§ 404.1520c(b).  Of particular import is the explanation that the supportability and

consistency factors . . .

> . . . *are the most important factors* we consider when we determine
> how persuasive we find a medical source's medical opinions or prior
> administrative medical findings to be.  Therefore, we will explain how
> we considered the supportability and consistency factors for a medical
> source's medical opinions or prior administrative medical findings in
> your determination or decision.

20 C.F.R. § 416.920c(b)(2) (emphasis added).  In addition to "supportability" and

"consistency," the SSA will also consider "relationship with the claimant,"

"specialization," and "other factors."  20 C.F.R. § 404.1520c(c)(1)-(5).

In the written decision regarding Plaintiff's application for DI benefits, the

ALJ stated he considered "the medical opinion(s) and prior administrative medical

finding(s)" in accordance with 20 C.F.R. § 404.1520c.  (ECF No. 8, PageID.43.)

Thereafter, the ALJ expressly cited three pieces of opinion evidence – two by state

agency reviewers and one by a treating physician.

### a.    State agency reviewers

As to the physical RFC assessments by state agency medical consultant

Edward Brophy, D.O. on February 24, 2020 (*id*., PageID.96-98) and state agency

medical consultant Kelly Donovan, D.O. on April 24, 2020 (*id*., PageID.108-110),

the ALJ observed their "light work" exertional limitations, their mostly

"occasional" postural limitations (with the exception of "frequent" balancing), as

well as the environmental limitations of avoiding concentrated exposure to

"extreme cold," "vibration," and "hazards (machinery, heights, etc.)."  (ECF No. 8,

PageID.46.)  Then, the ALJ stated:

> . . . these statements [are] persuasive as they are *well-supported* by
> detailed explanation and generally *consistent* with the evidence as a
> whole.  However, I find that the record *does not document support* for
> avoiding concentrated exposure to vibrations.  Further, I find that the
> evidence reflects that the claimant should not climb ropes or scaffolds
> due to his back pain.  While I find that the claimant could occasionally
> climb ladders, he would need to avoid other types of hazards, such as
> other types of unprotected heights or dangerous moving machinery.

(*Id.* (emphases added).)

Plaintiff contends the state consultants' findings should not be found

persuasive, because they did not physically examine Plaintiff; instead, their

opinion is solely based on a review of an "uncompleted record."  (ECF No. 13,

PageID.520-521; *see also* ECF No. 10, PageID.484.)  To the extent Plaintiff relies

upon the "examining relationship" factor, *i.e.*, the guidance that "[a] medical

source may have a better understanding of your impairment(s) if he or she

examines you than if the medical source only reviews evidence in your folder[,]"

20 C.F.R. § 404.1520c(c)(3)(v), the ALJ is *also* permitted to consider "other

factors, such as "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and

evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5).  Although not binding

upon this Court, another court has put it succinctly:  "the ALJ is entitled to rely upon the state agency consultants' superior understanding of the rules and regulations governing Social Security disability adjudications under the revised regulations[.]"  *Elizabeth B. v. Kijakazi*, No. 21-CV-02368-JSC, 2022 WL 4543686, at *4 (N.D. Cal. Sept. 28, 2022).

To the extent Plaintiff challenges the completeness of the record before the state agency consultants at the time of their physical RFC assessments, the administrative record's medical record exhibits span the period from October 31, 2017 to May 7, 2020 (ECF No. 8, PageID.23-24 [Index], 284-461 [Exhibits 1F to 9F]).  Plaintiff claims the state agency consultants "do not have the entire record that shows continued, uncontrolled symptoms[,]" (ECF No. 10, PageID.484), but she does not explain which records were missing from either Brophy's February 2020 review or Donovan's April 2020 review (*id.*, PageID.90-92, 103-105).  Perhaps Plaintiff meant to reference those records *post-dating* Donovan's April 2020 review, *e.g.*, those from Plaintiff's May 7, 2020 office visit with Mark Banno, M.D. (*id.*, PageID.409-411).  If so, Plaintiff seems to reference this office visit generally within his review of the "relevant medical evidence," but Plaintiff's opinion evidence argument does not explain how Dr. Banno's notes should have changed Dr. Donovan's physical RFC assessment.  (*Compare* ECF No. 10,

PageID.468 (citing, *inter alia*, ECF No. 8, PageID.410); *with*, ECF No. 10,

PageID.483-484.)

In the end, the ALJ addressed supportability and consistency factors when

finding the state agency opinions persuasive. (ECF No. 8, PageID.46.) Plaintiff

contests this conclusion, noting that "Plaintiff admits to suffering from low back

pain with associated radicular pain, weakness, and tingling to bilateral lower

extremities aggravated by movement/positioning, twisting, and flexing/extending

back[,]" (ECF No. 10, PageID.483), in support of which he cites records – in many

cases the subjective portion – dated August 2018, September 2018, October 2018,

July 2019, and August 2019 (ECF No. 8, PageID.342, 344, 346-347, 355, 423,

425, 432, 435-436). The Commissioner points to the ALJ's statement that Plaintiff

had "regularly *demonstrated* unremarkable musculoskeletal and neurological

*examination findings* [prior to the date last insured], including normal motor

strength, normal sensation, normal reflexes, and a normal gait and station[,]" (ECF

No. 8, PageID.46 and ECF No. 12, PageID.513 (emphases added)), in support of

which the Commissioner cites records dated October 2017, August 2018,

September 2018, October 2018, April 2019, July 2019, October 2019, and January

2020 (ECF No. 8, PageID.356, 358, 404, 413, 416, 419-420, 422, 426, 429, 432,

436). Yet, in this appeal, Plaintiff does not challenge the ALJ's consideration of

Plaintiff's symptoms, which the ALJ stated was done "based on the requirements

11

of 20 CFR 404.1529 and SSR 16-3p." (*Id*., PageID.43.)  In sum, Plaintiff has not

shown that the ALJ's treatment of the state agency medical consultants' physical

RFC assessments was improper.

### b.    Treating physician

However, the Court should not reach the same conclusion as to the ALJ's

treatment of Ali M. Alsaadi's September 7, 2017 opinion form.  By way of

background, Plaintiff treated with Dr. Alsaadi on at least October 30, 2017 and

August 14, 2018, and perhaps also in conjunction with the November 7, 2017

cardiac stress test.  (*Id*., PageID.354-359, 362, 364, 290-298.)  Within the ALJ's

discussion of the opinion evidence, he stated with respect to Dr. Alsaadi's

"Physician's Transportation Restriction Form" (which is dated September 7, 2017

but signed on October 30, 2017):

> I also considered the October 2017 statements of Dr. Ali Alsaadi, who
> indicated that the claimant would be medically unable to walk ¼ mile
> for a 1-year duration (6F [ECF No. 8, PageID.368]).  I find this
> statement unpersuasive as Dr. Alsaadi provided *no specific support*
> for this statement and the opinion is *inconsistent* with the totality of
> the evidence of record.  Specifically, the claimant regularly
> demonstrated unremarkable musculoskeletal and neurological
> examination findings prior to the date last insured, including normal
> motor strength, normal sensation, normal reflexes, and a normal gait
> and station (Id.).  These examination findings do not support that the
> claimant would be unable to walk ¼ of a mile.

(ECF No. 8, PageID.46 (emphases added).)

<u>The problem with Dr. Alsaadi's form is that it concerns an entirely different patient –Michael C. (not Rabah Arabo) – with an entirely different date of birth – September 19, XXX6 (not July 21, XXX2)</u>.  (*Compare* ECF No. 8, PageID.368; *with*, *id.*, PageID.191).[3]  Perhaps it was a misfiling at the physician's office, because the October 30, 2017 date of signature on the form for non-party Michael C. is the same as one of the dates on which Dr. Alsaadi treated Plaintiff (*see id*., PageID.356-359).  Of course, it is also possible Michael C.'s name and date of birth were transposed on this form.  Based on the record, the Court is unable to discern which is true.

In addition, the Court is perplexed as to why this issue has not yet been raised during the administrative process through the briefing before this Court.  Within the administrative record, Dr. Alsaadi's form was mentioned in the February 27, 2020 initial disability determination explanation (DDE) (ECF No. 8, PageID.91, 94-96), the April 27, 2020 reconsideration DDE (*id*., PageID.104, 106, 108), and the ALJ's September 1, 2020 written decision (*id*., PageID.46).[4]  Within

---

[3] And, it seems the amendment to Plaintiff's DI application concerned clarification of his middle name to either "L." or "Latif."  (*Compare* ECF No. 8, PageID.191-192; *with id*., PageID.193-194.)

[4] In fact, after reviewing records from office visits with Dr. Alsaadi on October 30, 2017 (*see id*., PageID.356-359) and August 14, 2018 (*see id*., PageID.354-356), as well as Plaintiff's August 14, 2018 lumbosacral spine x-ray, which was ordered by Dr. Alsaadi (*see* ECF No. 8, PageID.362), each of the DDEs noted Dr. Alsaadi's

the briefing in this appeal, Plaintiff mentioned Dr. Alsaadi's form in the February
1, 2022 motion as part of the "relevant medical evidence" and within the argument
that the ALJ "improperly weighted medical opinions[.]" (ECF No. 10,
PageID.467, 483.) Likewise, the Commissioner mentions Dr. Alsaadi's form
within both the March 25, 2022 RFC and opinion evidence arguments. (ECF No.
12, PageID.500, 509, 512-513.) Finally, Plaintiff does not address the non-party
nature of Dr. Alsaadi's form addressed in his April 23, 2022 reply. (ECF No. 13,
PageID.520-521.)

Put another way, as best the Court can tell, over the more than two-year
period from the February 27, 2020 initial disability determination through the April
23, 2022 close of briefing in this appeal, no one has addressed the apparent fact
that *Dr. Alsaadi's September 7, 2017 form has nothing to do with the Plaintiff in
this case*. Considering that this piece of evidence does not concern Plaintiff, it
makes little sense for the Court to consider either Plaintiff's challenge to or the
Commissioner's defense of the ALJ's consideration of the supportability and/or
consistency factors. (*See* ECF No. 10, PageID.483-484; ECF No. 12, PageID.509-
511.) And, it seems patently unfair to Plaintiff if, through no fault of his own, a
medical record that might well have supported his disability claim is missing. The

form was "without substantial support from the medical source who made it, which
renders it less persuasive." (ECF No. 8, PageID.94, 98, 106-107, 111.)

ALJ should have noted the mistake and taken steps, or directed Plaintiff's representative to take steps, to supply the correct record, rather than compounding the state agency consultants' error of using someone else's record against the claimant.

### c.   Harmless error

Had the parties identified the seeming irrelevance of Dr. Alsaadi's September 7, 2017 form opinion, the Court would next expect to consider whether the ALJ's consideration of this non-party evidence was harmless error.  However, the parties' failure to notice the impropriety of non-party Michael C.'s form in Plaintiff Arabo's file taints the parties' related harmless error arguments.  For example, Plaintiff argues that Dr. Alsaadi's opinion "is consistent across the board with numerous pieces of the record[,]" (ECF No. 10, PageID.484).  Maybe it is, maybe it is not; it does not matter, because the form concerns a non-party.  Also, the Commissioner's argues that Dr. Alsaadi's opinion "does not qualify as a medical opinion . . . [,]" or, even if it did, "is 'so patently deficient that the Commissioner could not possibly credit it' rendering any error harmless."  (ECF No. 12, PageID.511-512 (quoting *Wilson v. Commissioner*, 378 F.3d 541, 547 (6th Cir. 2004).)  However, by finding "this statement unpersuasive," ALJ Smereka treated it as a piece of opinion evidence (ECF No. 8, PageID.46); as such, the

15

Court should decline to comment on whether it is "patently deficient" such that the Commissioner "could not possibly credit it . . . ." *Wilson*, 378 F.3d at 547.

## F.   Conclusion

While Plaintiff has the burden of proof on his statement(s) of error, *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997), the judicial review statute grants this Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  This Court "not only ha[s] the discretionary authority under § 405(g) to remand without a showing of good cause, but it [i]s also *obliged* to do so if all of the essential factual issues have not yet been resolved."  *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994) (emphasis in original).  At least one circuit court has stated, "[w]hile a remand request is normally made by a party, there is no reason why a court may not order the remand sua sponte."  *Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C. Cir. 1977) (citations omitted).  *See also Martin v. Comm'r, Soc. Sec. Admin.*, 61 F. App'x 191, 202 (6th Cir. 2003) (Moore, J., dissenting) (citing *Igonia*), *order clarified*, 82 F. App'x 453 (6th Cir. 2003); *Helton v. Comm'r of Soc. Sec.*, No. CV 14-14931, 2016 WL 6080213, at *8 (E.D. Mich. Feb. 19, 2016) (Whalen, M.J.) ("Plaintiff does not cite the deposition testimony in her brief or otherwise argue that the new evidence

presents grounds for remand. Nonetheless, the Court has considered whether the deposition testimony supports a remand under the sixth sentence of 42 U.S.C. 405(g)."), *report and recommendation adopted*, No. 14-CV-14931, 2016 WL 1253269 (E.D. Mich. Mar. 31, 2016); *Seay v. Colvin*, No. 12-CV-14410, 2013 WL 5785782, at *12 n.4 (E.D. Mich. Oct. 28, 2013) (Steeh, J., *accepting report and recommendation of* Grand, M.J.) ("there is precedent for a court to *sua sponte* remand a case back to the ALJ under sentence four of 42 U.S.C. § 405(g).").

As detailed in the foregoing discussion, the Court finds on its own that there is error in the ALJ's RFC determination.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment or remand (ECF No. 10), **DENY** Defendant's motion for summary judgment (ECF No. 12), and **REMAND** this matter to the Commissioner for action consistent with this report.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 16, 2023

Hon. Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE